UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARCUS ROBINSON,

        Petitioner,

vs.                                                            Case No. 3:19-cv-1013-BJD-LLL

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## ORDER

## I.  STATUS

Petitioner Marcus Robinson, represented by counsel, filed a Petition Under 28 U.S.C. § 2254 by a Person in State Custody Pursuant to a State Court Judgment (Petition) (Doc. 1).  He raises three grounds claiming ineffective assistance of counsel and challenges a 2008 state court (Duval County) conviction for second-degree murder.  Respondents filed a Response to Petition for Writ of Habeas Corpus (Response) (Doc. 5) and Exhibits (Doc. 5).[1]

---

[1] Respondents filed Exhibits (Doc. 5).  The Court hereinafter refers to the Exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers.  Otherwise, the page number on the particular document will be referenced.  The Court references the docket and page numbers assigned by the electronic filing system for the Petition and Response.

Petitioner filed a Reply to the Respondents' Response (Doc. 6).   See Order

(Doc. 4).

The Court concludes no evidentiary proceedings are required in this

Court.   The pertinent facts are fully developed in the record, or the record

otherwise precludes habeas relief; therefore, the Court can adequately assess

the claim without any further factual development.   Turner v. Crosby, 339

F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## II.   HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner

"only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States."   Lee v. GDCP Warden, 987 F.3d 1007,

1017 (11th Cir.) (quoting 28 U.S.C. § 2254), cert. denied, 142 S. Ct. 599 (2021).

For issues previously decided by a state court on the merits, this Court must

review the underlying state-court decision under the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA).   In doing so, a federal district

court must employ a very deferential framework.   Sealey v. Warden, Ga.

Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted)

(acknowledging the deferential framework of AEDPA for evaluating issues

previously decided in state court), cert. denied, 141 S. Ct. 2469 (2021); Shoop

v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes

2

"important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Thus, "[u]nder AEDPA, a court cannot grant relief unless the state court's decision on the merits was 'contrary to, or involved an unreasonable application of,' Supreme Court precedent, or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1364 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)-(2)), cert. denied, 142 S. Ct. 441 (2021).   The Eleventh Circuit instructs:

> A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000).   "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. 1495.

Lee, 987 F.3d at 1017-18.   Therefore, habeas relief is limited to those occasions where the state court's determinations are unreasonable, that is, if no fairminded jurist could agree with them.   McKiver, 991 F.3d at 1364.

This high hurdle is not easily surmounted.  If the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'"  Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).  Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary."  Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).  See Hayes v. Sec'y, Fla. Dep't of Corr., 10 F.4th 1203, 1220 (11th Cir. 2021) (Newsome, Circuit Judge, concurring) (recognizing the universal requirement, applicable to all federal habeas proceedings of state prisoners, set forth in 28 U.S.C. § 2254(e)(1)).  This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001).  Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."  Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), cert. denied, 142 S. Ct. 124 (2021).  As such,

a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.  Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgment, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland standard." Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), cert. denied, 141 S. Ct. 2471 (2021).  Pursuant to this standard, "a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense.  Strickland, v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).  We need not address both prongs if a petitioner makes an insufficient showing on one prong.  Id. at 697.

To prevail, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'"   Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687), cert. denied, 142 S. Ct. 1234 (2022).   Additionally,

> because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so.   Harrington [v. Richter, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted).   Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."   Id.

Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020), cert. denied, 141 S. Ct. 1721 (2021).

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   Hill v. Lockhart, 474 U.S. 52, 59 (1985). The ineffective assistance of counsel may require a plea be set aside on the ground that it was involuntary because voluntariness implicates not only

threats and inducements but also ignorance and incomprehension.   Finch v. Vaughn, 67 F.3d 909, 914 (11th Cir. 1995) (citations omitted).

This Court must be mindful that in a post-conviction challenge to a guilty plea, the representations of the defendant, his counsel, and the prosecutor at the plea hearing, plus the findings of the judge, constitute "a formidable barrier."   Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).   Indeed, a defendant's solemn declarations in open court carry a strong presumption of verity.   Thus, later contentions by a defendant contrary to the record may be deemed wholly incredible based on the record.

## IV.   GROUND ONE

**Ground One:   Defense counsel rendered ineffective assistance of counsel by failing to properly investigate and advise Petitioner Robinson regarding a self-defense theory.**

Petitioner exhausted ground one by raising it in his Second Amended Motion for Postconviction Relief and on appeal to the First District Court of Appeal (1st DCA).   Ex. F at 28-42, 46-56; 76-83, 84-141; Ex. H; Ex. K; Ex. L; Ex. O; Ex. R.   The claim is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and Hill or based on an unreasonable determination of the facts.   As such, Petitioner is not entitled to habeas relief on ground one.

The record shows Petitioner was arrested, and by information, charged with murder in the second degree.   Ex. A at 1-5, 12.   The court appointed the public defender to represent Petitioner.   Ex. A, docket, case no. 16-2007-CF-019023.   The record also demonstrates defense counsel scheduled and/or participated in numerous depositions.   Id. at 1-3.

On April 24, 2008, Petitioner was charged by Indictment with First-Degree Murder.   Ex. A at 25-26.   Trial preparation continued.   On July 28, 2008, the trial court discharged the public defender/regional conflict counsel, and then Shawn A. Arnold, John P. Leombruno, and Vanessa Zamora, retained counsel, appeared for Petitioner.   Ex. A, docket, case no. 16-2007-CF-019023 at 5.   The state filed a motion to compel body material samples, informing the court that, during the course of the investigation, the police recovered a cigarette butt from the scene near the body, and the DNA profile of the major contributor to the DNA mixture was developed at 12 of 13 markers from a male donor, and the police had recovered DNA from Petitioner's abandoned soda can, and developed a DNA profile at 13 markers, and ultimately, a comparison revealed a match at the 12 markers developed from the cigarette butt.   Id. at 43-44.   The trial court granted the state's motion.   Id. at 45.

Petitioner's counsel filed a motion for authorization to incur costs of depositions, and the court granted the motion.   Id. at 46-48.   Although a final pretrial was scheduled for August 21, 2008, the court canceled the hearing as there was a possible disposition.   Ex. A, docket, case no. 16-2007-CF-019023 at 5-6.

On the charge of first-degree murder, Petitioner faced a life sentence with a minimum mandatory of 25 years in prison.   Ex. B at 14-15.   He faced the same maximum sentence on a second-degree murder charge.   Id.   On August 14, 2008, Petitioner signed a Plea of Guilty and Negotiated Sentence for the lesser included crime of murder in the second degree with a range of sentence between or including 25 years and 45 years in prison with a 25-year minimum mandatory sentence because he used a firearm.   Ex. A at 49-52. The plea form outlined that the judge would decide the sentence within the agreed upon range, but Petitioner would have the opportunity to present mitigating evidence and the state may present any aggravating evidence.   Id. at 49.

Regarding the plea document, Petitioner initialed each section of the form.   It reads, in pertinent part:

> I hereby enter my plea of guilty to the lesser
> included crime of murder in the second degree because

9

I am guilty and because I feel it is in my best interest. Before entering this plea of guilty, I was advised of the nature of the charge against me, the statutory offenses included within the charge, the range of allowable punishments, **the possible defenses to the charge**, circumstances in mitigation, and all other facts essential to a broad understanding of the charge against me.

. . . .

During the course of this case I have been provided the police reports and other discovery and have thoroughly discussed them with my attorney.   I know what the evidence is against me.

Before entering this plea of guilty, my attorney and I have fully discussed all aspects of this case on several occasions at the jail and in the courtroom.    My attorney has answered all my questions and has fully explained the charge against me.   I am satisfied with the services that my attorney has rendered in this case in my behalf.   He has not refused or failed to answer any of my questions, and I do not have any other questions that need to be answered before I enter this plea of guilty.   My attorney has investigated every aspect of this case that I have asked him to, and I am not aware of any investigation which has not been done properly.   I believe he has obtained everything I wanted him to.   I specifically waive any further discovery.

Id. at 49-50 (emphasis added).

Significantly, Petitioner initialed the portion which states: "I have had sufficient time to consider the charge against me, **the possible defenses**, the advice of my attorney, the waiver of constitutional rights by entering my plea

of guilty and to reflect upon the consequences of my plea." <u>Id</u>. at 51 (emphasis added).   Finally, Petitioner and his counsel signed the form.   <u>Id</u>. at 52.

At the inception of the plea proceeding, Mr. Arnold announced that Petitioner was pleading guilty with the understanding he would be adjudicated guilty and sentenced with the range of 25-year minimum mandatory up to 45 years in prison.   Ex. B at 13.   Counsel noted that Petitioner had initialed every paragraph and signed the form.   <u>Id</u>.   Petitioner, under oath, affirmed that he was not under the influence of alcohol or drugs, he could read, write, and understand the English language, and he did not presently or in the past suffer from a mental illness.   <u>Id</u>. at 13-14.   The court advised Petitioner that he faced a life sentence with a minimum mandatory 25 years in prison, but due to the plea agreement, the court would impose a sentence which would be no less than 25 years but no greater than 45 years.   <u>Id</u>. at 14-15.   Petitioner confirmed that he understood.   <u>Id</u>. at 15.

Certainly of import, when the court asked if there was any DNA evidence in the case, the state responded in the affirmative and said, "it's incriminating in nature."   <u>Id</u>.   Petitioner stated he had read the plea form, understood it, and signed it.   <u>Id</u>. at 15-16.   The court reiterated the rights Petitioner was giving up by pleading guilty, and Petitioner acknowledged that he understood that he was giving up those rights, he had had sufficient time to discuss the

case with Mr. Arnold, Petitioner had told Mr. Arnold everything Petitioner knew about the case, Mr. Arnold had answered all of Petitioner's questions about the case, Petitioner was satisfied with Mr. Arnold's representation, and confirmed that no one had threatened, coerced or intimidated Petitioner to plead guilty and no one had promised Petitioner that he would receive a sentence other than one that falls within the agreed upon range.   Id. at 16-17.

The state provided a factual basis for the plea:

> Your Honor, on or between July 20th, 2007, and July 21st, 2007, this defendant in Duval County, Florida, did unlawfully and by act imminently dangerous to another and evincing a depraved mind regardless of human life did kill Kendra Alicia Brooks, a human being, by shooting Miss Brooks, a firearm was used, and it was discharged in such a manner that it did cause death.   All of that is contrary to Florida Statutes 782.04 and 775.087.

Id. at 18.

Upon inquiry, the defense did not take exception to the factual basis for the plea.   Id.   The court found a factual basis for the plea.   Id.   Additionally the court found Petitioner had entered his plea of guilty freely and voluntarily with a full understanding of the plea agreement and his constitutional rights, and waiver of those rights.   Id.

Just as promised, at the sentencing proceeding, Petitioner was allowed to put on mitigating evidence and called seven witnesses to testify on his

12

behalf.   The state was allowed to put on aggravating evidence.   Also of note,

Petitioner took the stand and was sworn as a witness.   Ex. B at 67.   He

admitted he was in fact guilty of the offense of murder in the second degree.

Id.   He explained that he did not feel he was guilty of murder in the first

degree.   Id. at 68.   When asked to tell the judge what happened that night,

Petitioner attested:

> A     Well, I know we were walking to get my daughter some formula, some diapers.
>
> Q     Was that a planned trip?
>
> A     Yes, we [Petitioner and Kendra Brooks] were planning to get some formula, some diapers.
>
> Q     Was it like you met early and said get together at 10:00 o'clock?
>
> A     No, she called me on the phone, said Marcus the baby need [sic] some formula because she didn't have any more wick.   So I said, I'll come get it.
>
> Q     When you said wick, she had run out of food stamp [sic]?
>
> A     (Nods.)
>
> Q     If you could for the court reporter say yes or no because she's taking everything down.
>
> A     Yes, ma'am.
>
> Q     So at some point you go out and you go to Walgreens to get things for Karma, is that correct?

13

A     Yes, sir.

Q     And then at some point during the evening the two of you end up having a disagreement, what was that about?

A     About she her taking Karma away, moving down to Tampa with some family members.

Q     Had you previously discussed with Kendra she was going to give you custody of Karma?

A     Yeah, we discussed it.   I went to do the leg work with the lady – I forgot.

Q     At Legal Aid?

A     At Legal Aid, but she said she will agree, she never signed.   So kind of back and forth then.

Q     Did you now – obviously Kendra is not here today, we're not here to disparage her, but did you have some concerns about her having custody of Karma?

A     Yes, sir.

Q     Okay.   Just leaving it at that, moving on.   Did she during that evening back out of that agreement with you?

A     Yes, sir.

Q     Do you as part of your training at the Navy and such did you keep a firearm with you?

A     No, sir.

Q      Did you happen to have a firearm with you that night?

A      Yes, sir.

Q      Was that because something to do with your training at the Navy or trying to keep up marksmanship?

A      No, sir.

Q      Why did you have it?

A      Just Jacksonville and some times possibility of getting robbed or anything.

Q      Okay.

A      More of protection.

Q      Okay.   Now what – what happened?

A      She started talking about her taking Karma away from me, not getting my daughter.  **And we started arguing.   And I saw the firearm and I picked it up and I shot her.**

Q      Did you reflect on that thought?

A      No, sir.

Q      Did you have any – did you have any control over what you were doing at that moment?

A      No, sir.  **I was in a different state of mind.** I really don't know what happened verbatim that day but I know at the end after I shot her I was looking at her and I was kind of confused.   I took off and that's what happened that night.

> Q      **Now, many times you and I have talked**, you said repeatedly to me you can't believe it's gotten to this point.   Tell the judge what you mean by that.
>
> A      I can't believe I made a mistake that's this big. **I can't believe I even did anything like that. That's way out of my character, but I guess I just clicked, went in a depraved state of mind and this is the outcome of it.**

Id. at 68-71 (emphasis added).

In closing, Mr. Arnold told the court that Petitioner was standing before the court, "confessing to what he did in this matter."   Id. at 107.   Mr. Arnold noted there was a disagreement between Petitioner and Ms. Brooks, and unfortunately, there was a firearm available, and Petitioner chose to use it. Id. 109.   Counsel emphasized that Petitioner was not blaming anyone else, but he also was not a cold-blooded murderer.   Id.   Mr. Arnold explained, Petitioner "pled appropriately after many months and negotiation with prior counsel and I became involved which we were able to convince the State to allow him to plead to a Second Degree Murder because that's in essence what we believe that he was guilty of."   Id.   The court adjudicated Petitioner guilty and sentenced him within the terms of the plea agreement to 45 years in prison with a minimum mandatory of 25 years.   Id. at 112.

16

Thus, the record demonstrates, Petitioner stated in his plea form he was entering his plea of guilty "because I am guilty and because I feel it is in my best interest."   Ex. A at 49.   He also agreed that he had been advised of the possible defenses to the charge and had sufficient time to consider the possible defenses.   Upon review of the plea colloquy, he knew he was facing a sentence of life with a minimum mandatory sentence of 25 years.   Ex. B at 14-15.   In reaching its decision to accept the plea, the trial court accepted the factual basis for the plea as set forth by the state, without exception from the defense. Petitioner never objected to the statement of the factual basis for the plea.   He avoided facing a life sentence by pleading to a negotiated sentence between or including 25 and 45 years in prison.   He received the benefit of the bargain. Moreover, the court's sentence was within the terms of the agreement. Notably, after adjudication, Petitioner did not move to withdraw his plea.

Petitioner faces the formidable barrier of his sworn testimony and representation at the plea hearing, the written statements in the signed plea form, and his sworn testimony at sentencing.   His solemn declarations are not taken lightly and carry a strong presumption of verity.   Petitioner's contentions to the contrary are wholly incredible in view of the record.   Also, his attempt to go behind his previously sworn testimony is not well received.

The record demonstrates that Petitioner was represented by various counsel who undertook depositions and prepared for trial.   Also of note, there was, as described by the state, incriminating DNA evidence.   Based on Mr. Arnold's statement at sentencing, the plea negotiations extended over many months with prior counsel and continued with Mr. Arnold.[2]   Mr. Arnold said he spoke with Petitioner many times.   Mr. Arnold was able to convince the state to allow Petitioner to plead to second-degree murder, the crime the defense believed he was guilty of under the circumstances.

Significantly, at sentencing Petitioner described the incident as an argument, and then Petitioner seeing the gun, picking it up, and shooting the victim, without reflecting on his actions.   He said when he acted, he was in a depraved state of mind.   He never testified there was any sort of a physical struggle or that the victim grabbed a gun and Petitioner grabbed the gun from the victim in an attempt to disarm her and to protect himself.   See Petition at 7.

Petitioner raised his claim of ineffective assistance of counsel in the first ground of his Second Amended Rule 3.850 motion.   In undertaking its review, the circuit court identified the performance and prejudice prongs, and noted as

---

2  Notably, the record shows, during the pendency of the criminal case, Petitioner had several attorneys who undertook an investigation of the crime, filed motions, and took depositions.

this was a claim of ineffective assistance of counsel relating to a guilty plea, Petitioner had to demonstrate a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have instead insisted on going to trial.   Ex. F at 85.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on the parameters set forth in <u>Strickland</u> and <u>Hill</u>.   Furthermore, Petitioner has failed to show that the state court unreasonably applied <u>Strickland</u> and <u>Hill</u> or unreasonably determined the facts.   Indeed, the state court was objectively reasonable in its inquiry and the 1st DCA affirmed the circuit court's decision.

The trial court, in denying post-conviction relief, recognized that a guilty plea does not waive a claim of ineffective assistance of counsel regarding unknown defenses about which the defendant was not advised.   Ex. F at 86. However, the court also noted the strength and viability of the defense are important factors that much be considered in assessing the probability that a defendant would have actually risked trial on the basis of the particular defense.   <u>Id</u>.   In its assessment, the trial court concluded that Petitioner had failed to allege facts that would make a self-defense claim likely to succeed at trial.   <u>Id</u>.   The court noted Petitioner left out significant details relevant to claiming self-defense, including failure to explain why the disarmed victim

posed a threat to Petitioner and needed to be shot to prevent dire consequences.

Id.

The circuit court opined:

> The Defendant now argues that the statements he made at the sentencing hearing should not be used to defeat his post-conviction claim because, at the time he made those statements, he had not been advised about the applicability of self-defense. This would seem to imply that, had he known, he would have told a different set of facts. He was under oath. He was obligated to tell the truth. Whether he was aware of the legal elements of self-defense, he could have told the Court the victim got to the gun first and threatened him, as he now claims. He did not. He said, essentially, "I picked the gun up and I shot her because I was angry."

Id. at 88.

The court reasoned:

> Where the Defendant's motion fails to assert specific facts supporting self-defense, where none of the facts he told the Court under oath at sentencing gave any hint of self-defense, and where he initially lied to police about the shooting, the Court does not find he has demonstrated he had a viable defense, a defense he would have risked taking to trial had he been advised about it. Counsel cannot be deemed ineffective for failing to advise on what appears to be an untenable defense.

Id.

In undertaking its review, the court found the following matters significant. Petitioner originally denied being present at the scene and having

20

any knowledge of the shooting and admitted to lying to the police.   Id. at 87.
Therefore, he left himself open to being discredited, weakening any claim of
self-defense as he had failed to provide consistent versions of the events.   Id.
Also of import, the circuit court referenced Petitioner's sworn testimony given
at sentencing.   Id. at 87-88.   He testified he lied to the police, he knew he was
wrong, he was angry with the victim, it was a crime of passion and a mistake,
his gun was under the passenger seat, and he picked up the gun and he shot
the victim while she was outside of the car.[3]   Ex. B at 72-74.   See Henry v.
State, 920 So. 2d 1245, 1246 (Fla. 5th DCA 2006) (a defendant is bound by the
statements he makes under oath and is not entitled to have a plea set aside by
relying on a claim that the plea was involuntary based on allegedly perjured
testimony).   Here, any claim of self-defense would be untenable or so entirely
left open to being attacked and discredited that there was no objectively
reasonable probability that Petitioner would not have entered a plea had his
attorney undertook a self-defense investigation and advised Petitioner of such.

As noted by Respondents, Response at 32, a court is not obliged to upset
a plea based on *post hoc* assertions of an attorney's deficiencies but rather
should look to contemporaneous evidence concerning the plea, which is what

---

3 Although given the opportunity to describe his version of the events, Petitioner never
attested that the victim picked up a gun, there was a struggle over the gun, he managed to
get the gun away from the victim, and then he shot the victim.

the circuit court did in this circumstance.   <u>Lee v. United States</u>, 137 S. Ct. 1958, 1967 (2017).   In assessing the plea colloquy, Petitioner's statements on the record during the colloquy, and the sentence obtained by the plea, the circuit court found, "[u]nder a totality of the circumstances, the Defendant has failed to demonstrate there was an objectively reasonable probability that he would not have entered a plea had his attorney investigated a claim of self-defense."   Ex. F at 89.

With regard to Petitioner's assertion that private counsel wanted additional money to investigate further and proceed to trial, forcing him to take a plea, the court dismissed this excuse finding Petitioner qualified for a public defender; therefore, Petitioner had the option to decline the plea offer and proceed with appointed counsel.   As such, the court rejected any contention Petitioner was forced to enter a plea because his private counsel wanted additional funds for going to trial.   <u>Id</u>.   The 1st DCA affirmed the decision of the circuit court.   Ex. L.

Petitioner complains he did not receive an evidentiary hearing in the state courts.   He asserts he is entitled to an evidentiary hearing.   Petition at 10.   Under these circumstances, Petitioner is not entitled to an evidentiary hearing.   <u>See</u> <u>Harris v. Sec'y, Dep't of Corr.</u>, No. 8:16-cv-3323-T-35AEP, 2020 WL 906183, at *12 (M.D. Fla. Feb. 25, 2020) (no need to hold a hearing or

appoint conflict-free counsel if claim conclusively refuted by record).   In rejecting Petitioner's claim, the circuit court considered the totality of the circumstances surrounding the plea while considering the written plea agreement, the plea colloquy, Petitioner's sworn testimony, and the sentence imposed.   Petitioner signed the plea form and gave sworn testimony accepting the bargained for judgment and sentence.   Apparently, in hindsight, Petitioner now regrets his decision to plead guilty.   Petitioner's current dissatisfaction with his bargained for sentence does not negate his sworn testimony at the plea proceeding and at sentencing.   Petitioner may not now seek to go behind his sworn testimony.   The record shows he received the benefit of the bargain and is serving a sentence of 45 years, a sentence he was advised he could receive upon entering his bargain and within the agreed upon range.   As such, Petitioner is not entitled to habeas relief on ground one of the Petition.

Applying the look through presumption described in <u>Wilson</u>, the state court's ruling is based on a reasonable application of the law.   The state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and <u>Hill</u> or based on an unreasonable determination of the facts. The circuit court considered the totality of the circumstances surrounding the plea, including whether a particular defense was likely to succeed, the plea

23

colloquy, and the difference between the sentence imposed by the court under the plea and maximum possible sentence Petitioner faced at trial.

Of note, the record shows, after months of negotiations, the defense was able to obtain an agreement from the state to let Petitioner plead to murder in the second degree and to a sentence within an agreed upon range, capped at 45 years. The record shows the plea colloquy was thorough, with the court explaining the parameters of the agreement and that the court would sentence Petitioner within the stated range. Petitioner may be dissatisfied with his sentence, as he received a sentence at the high-end of the agreed upon range, but he avoided facing a life-sentence and received the benefit of the bargain, pleading out to second-degree murder and obtaining a sentence in the accepted range. Petitioner is not entitled to habeas relief on ground one.

## V.   GROUND TWO

**Ground Two:   Defense counsel rendered ineffective assistance of counsel by failing to object and move to disqualify the sentencing judge when the sentencing judge expressed the belief that the appropriate sentence was death.**

The focus of this claim is based on one statement made by the sentencing judge. Petitioner contends the statement at issue demonstrated the sentencing judge was predisposed to impose the harshest sentence possible as the judge already believed the appropriate sentence for the crime was death.

24

However, read in context, it is quite apparent that the statement was not an expression of the sentencing judge that he believed the appropriate sentence for Petitioner was death.   An explanation follows.

The state called Komesha Cason, the victim's aunt to testify at sentencing.   Ex. B at 84-85.   She testified, in pertinent part:

> Your Honor, Marcus Robinson still gets to have a relationship with his daughter Karma.   Although he brutally murdered her mother, he still gives something her family does not have.   We know his family will ensure he has a relationship with her, but what about us, Your Honor.   He still gets to experience life, how is this possible?   How can you take another human being's life and still be able to endure breath yourself?

Id. at 89-90.

In pronouncing the sentence, after mentioning Petitioner's wonderful family of hardworking productive citizens, the court noted the disappointment the family must feel in Petitioner's actions.   Id. at 111.   The court continued:

> Miss Cason summed it up best, **how can you take another's life and still continue to live? Once upon a time in America you didn't live.** And once upon [a time] in America very few people got killed by the use of firearms.   We're not going to solve that problem today.   But maybe there's somebody in your community, maybe there's some elected official that you can talk to, and maybe we can make America a better place to be one day.

Id. (emphasis added).

25

The record shows the court recognized Ms. Cason's comments and dismay at the loss of her niece, noted historical norms of punishment, and then mentioned the uptick of the use of firearms to commit crimes in America that may need to be addressed by the community or by elected officials, but said the matter would not be resolved in the courtroom that day.   Id.   The court then sentenced Petitioner based on his plea to second-degree murder.    In this case, the victim died, the death was admittedly caused by the criminal and unlawful act of Petitioner as he said he "went in a depraved state of mind" after the victim told him she was taking their child to Tampa, and Petitioner picked up a firearm in anger and shot the victim.    Ex. B at 71.   See United States v. Jones, 906 F.3d 1325, 1329 (11th Cir. 2018), cert. denied, 139 S. Ct. 1202 (2019) (the only meaningful difference between first- and second-degree murder is first-degree murder requires premeditation).

Applying the Strickland and Hill standards, the circuit court denied this claim of ineffective assistance of trial counsel.   Ex. F at 89-90.   The court noted that a motion to disqualify a judge has to be well-founded and contain facts showing the judge prejudged the case or exhibited undue bias, prejudice, or sympathy.   Id. at 89.   The circuit court found there was no prejudgment as the judge did not make any comments about the appropriate sentence until after he heard from Petitioner and all of the witnesses for the defense and the

state.  Id. at 90.   Additionally, the circuit court found, the sentencing judge's "reference to the death penalty was a passing remark about historical norms of punishment, not a comment on what he believed the Defendant should receive."  Id.

Viewing the sentencing court's comments in context, the court reflected on the state's witnesses' comment, the historical norms of punishment, and the increase in crimes involving firearms in America.   He further stated that the court was not going to resolve the problem of the unlawful use of firearms in America as that was a matter to be addressed by community actors or government officials.   The court did not evince undue bias, prejudice or sympathy or indicate through its comments that the court had prejudged the Petitioner or made up its mind prior to the sentencing proceeding.

Indeed, the sentencing transcript shows Petitioner testified as to the events leading up to the death of the victim, Ex. B at 68-73, but the court asked for more details, making additional inquiries concerning what happened prior to the shooting and Petitioner's state of mind immediately before the shooting. Id. at 73-74.   More specifically, the court inquired as to Petitioner's location during the crime, the nature of the conversation which took place between Petitioner and the victim, Petitioner's state of mind at the time of the offense,

the location of the gun, and the location of the victim when Petitioner shot the victim.

It is important to note that the state asked the court to sentence Petitioner to 45 years in prison with a 25-year minimum mandatory sentence, arguing that Petitioner's sentence had been mitigated by allowing him to plead to a second-degree felony with an agreed upon range. Id. at 102-103. The defense asked for the minimum sentence under the agreement, 25 years in prison. Id. at 110. The court, after hearing from Petitioner and his witnesses in mitigation, hearing from the state's witnesses, and then hearing argument by counsel, sentenced Petitioner at the top of the range. Id. at 112.

The circuit court denied post-conviction relief, finding Petitioner failed to demonstrate a reasonable probability that a motion to disqualify would have been granted and Petitioner had not satisfied the Strickland standards. Ex. F at 90. Petitioner appealed the denial of post-conviction relief and the 1st DCA affirmed per curiam. Ex. L.

In denying post-conviction relief, the circuit court properly applied the two-pronged Strickland standard of review. Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on Strickland. Further, Petitioner has not shown the state court unreasonably applied Strickland or unreasonably determined the facts.

Indeed, upon review, the state court was objectively reasonable in its Strickland inquiry and in denying this ground for post-conviction relief. Petitioner has failed to show a reasonable probability exists that the outcome of his case would have been different if his counsel had given the assistance that Petitioner has alleged he should have provided.   Indeed, without satisfying the performance and prejudice prongs as set forth in Strickland, Petitioner cannot prevail on his claim of ineffective assistance of counsel. Furthermore, the 1st DCA affirmed.   Ex. L.

The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in Wilson, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In sum, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.   As such, Petitioner is not entitled to habeas relief on ground two of the Petition.

## VI.   GROUND THREE

**Ground Three:   Defense counsel rendered ineffective assistance of counsel by referencing, during the sentencing hearing, a transcript of Tacoma Frazier's deposition because the transcript contained a very damaging statement – i.e., Ms. Frazier's claim that the Defendant threatened to kill her.**

29

In his Second Amended Rule 3.850 motion, Petitioner raised a similar, if not identical claim.   He claimed defense counsel was ineffective for submitting the deposition transcript of Ms. Frazier during sentencing.   Ex. F at 36-37. Petitioner asserted, had this not been done, the result of the sentencing hearing would have been different as the transcript contained a highly prejudicial statement that Petitioner had threatened to kill Ms. Frazier, his girlfriend.   Id.

The record demonstrates Mr. Arnold did not submit the deposition at sentencing.   Ex. B at 104.   Instead, he referenced the deposition of Ms. Frazier, "which has already been made part of the court record."   Id.   Mr. Arnold noted the deposition was already in the record and the court already had a chance to look at it.   Id. at 105.   Mr. Arnold told the court he merely wanted to point out that portion where Ms. Frazier was asked if Petitioner had a violent reputation, and she responded no.   Id.   Mr. Arnold also noted Ms. Frazier described Petitioner as a generally sweet person, without causing problems, and a good father to his child.   Id.   Thereafter, counsel referenced a letter from Shirley Robinson, Petitioner's mother, which was tendered to the court and the court said it would read the whole letter and then attach it to the presentence investigation report.   Id. at 105-107.

Following defense's counsel presentation, the state interjected a comment regarding Ms. Frazier's deposition.   The state noted it was not asking the court to read the deposition contained in the court's file, but wanted to point out that portion of Ms. Frazier testimony where she stated Petitioner threatened to kill her or do her as he did the victim if Ms. Frazier ever testified against him.   Id. at 107.   Thereafter, the court heard closing arguments.

The circuit court, when addressing Petitioner's post-conviction claim, apparently confused the letter with the deposition.   Ex. F at 90-91.   The court was correct, however, in recognizing that Petitioner's counsel did not submit Ms. Frazier's deposition at sentencing.   Id. at 91.   The court concluded, "[t]he deposition itself was not introduced into evidence so it does not appear counsel was the one who introduced any harmful statements."   Id.

Of import, the court found no prejudice as it was clear from the court's announcement on the record that its reasons for imposing a lengthy sentence were due to the nature of the crime itself: "the victim had been the Defendant's girlfriend and was the mother of his child and to the fact that a firearm was used against a vulnerable victim."   Id.   Additionally, the reviewing court found that the sentencing court mentioned that Petitioner had other choices in his life.   Id.   The reviewing court noted that the sentencing court, in pronouncement of sentence, made no mention of Ms. Frazier's deposition

testimony but did remark about Petitioner's wonderful family.   Id.   As such, the court held Petitioner had not demonstrated there was a reasonable probability that, had counsel not introduced Ms. Frazier's testimony (referred to as the letter), the sentencing court would have imposed a lesser sentence. Id.   The 1st DCA affirmed.   Ex. L.

To the extent the circuit court presented sound reasoning, although apparently confused about the content of the deposition and the letter, this Court gives AEDPA deference.   The circuit court was correct in its finding that the deposition was not submitted by defense counsel at sentencing.   That is clearly the case.   Also, based on the record, it appears that the deposition was referenced as already being in the record, meaning the court already had an opportunity to review it and take its contents into consideration.   Thus, Mr. Arnold was not introducing something new that the court had not previously had an opportunity to review; therefore, the state's reference to the negative portions of the deposition did not introduce novel information to the court.

In short, although Mr. Arnold referenced favorable content contained in the deposition and the state referred to negative content in the deposition, the circuit court concluded, based on the sentencing court's pronouncement of its decision, it chose to impose a lengthy sentence within the agreed upon range

based on the nature of the crime itself, not on extraneous comments by Ms. Frazier.

The sentencing court, immediately before pronouncing sentence, said:

> Mr. Robinson, there is absolutely no justification in the world for killing somebody with a gun other than self-defense. **You killed a defenseless person who was a mother of your child.** You should have married her and had a healthy life with her like your mom and daddy did, but you didn't choose to do that.
>
> So based on your plea of guilty I'll adjudge you to be guilty. Sentence you to serve 45 years Florida State Prison with minimum mandatory of 25 years.

Ex. B at 111-12 (emphasis added).

Under these circumstances, the Court finds Petitioner's counsel did not perform deficiently and any alleged deficiency does not rise to the level of presenting a reasonable probability that the outcome of the Petitioner's proceeding would have been different. Here, Petitioner has not shown a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided, that is making no reference to Ms. Frazier's deposition during sentencing.

Thus, deference should be given to the state court's decision. The court applied the two-pronged <u>Strickland</u> standard; therefore, Petitioner cannot

satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1).   Applying the look-through presumption set forth in <u>Wilson</u>, the Court finds the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In sum, the state court's adjudication of this claim is not contrary to or an unreasonable application of clearly established Federal law or based on an unreasonable determination of the facts.   As such, ground three is due to be denied.

To the extent the state court's decision is not entitled to AEDPA deference, the Court finds Petitioner is not entitled to habeas relief.   There is no reasonable probability that, absent evidence of Petitioner's threat to Ms. Frazier, the sentencing court would have imposed a lesser sentence. Petitioner had told the court there was an argument about the custody of the child, he acted in anger - in a depraved state of mind, picked up a gun, and shot the mother of his child.   The court had just heard from the state's numerous witnesses concerning the impact on their lives due to the loss of the victim and from the detective on the case concerning Petitioner's denial of the crime and his callous remarks to the detective.

To the extent Ms. Frazier, in her deposition, provided both negative and positive comments about Petitioner which were brought to the sentencing court's attention, any negative impact was apparently offset by the positive

comments, resulting in the sentencing court's stated reliance on the nature of the crime itself in structuring its sentence.   This Court is not convinced that counsel's decision to point out favorable testimony in Ms. Frazier's deposition amounted to ineffective assistance, even though the deponent did provide some unfavorable testimony, referenced by the state.   The weight of Ms. Frazier's testimony highlighted by counsel was favorable and supported the defense's contention that Petitioner's isolated, violent act was an aberration, and he was generally a sweet person and a good father.

As such, Petitioner has not satisfied the performance prong of Strickland.   Without a showing of specific errors of counsel undermining the reliability of the proceeding, there is generally no basis for finding a Sixth Amendment violation.   Davis v. United States, Civil Action No. 14-00278-CG, Criminal No. 11-00272-CG-N, 2015 WL 5162507, at *16 n.7 (S.D. Ala. Aug. 31, 2015) (not reported in F. Supp.) (citations omitted).   See Stano v. Dugger, 921 F.2d 1125, 1153 (11th Cir.) (same), cert. denied, 502 U.S. 835 (1991).   Here, counsel performed within the bounds of reasonable competent counsel.

Assuming arguendo Petitioner has satisfied the performance prong of Strickland, he has not demonstrated prejudice.   It is evident that the sentence was imposed based on the nature and circumstances of the second-degree murder of Petitioner's former girlfriend.   In sentencing Petitioner, the judge

focused on Petitioner's criminal conduct, including taking the life of a defenseless person, the use of a firearm, and the vulnerability of the victim, the mother of Petitioner's child.   Petitioner has not demonstrated that but for counsel's alleged error (referencing the deposition transcript during sentencing), the outcome of the proceeding would have been different.   As such, Petitioner is not entitled to habeas relief on ground three.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.     This action is **DISMISSED WITH PREJUDICE**.

3.     The **Clerk** shall enter judgment accordingly and close this case.

4.     If Petitioner appeals the denial of his Petition (Doc. 1), **the Court denies a certificate of appealability**.[4]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper

---

[4] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

that may be filed in this case.   Such termination shall serve as a denial of the motion.

      **DONE AND ORDERED** at Jacksonville, Florida, this 18th day of April, 2022.

                               _____

                                    BRIAN J. DAVIS
                           United States District Judge

sa 4/15
c:
Counsel of Record

37